UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ADRIANO ALAIN CORTEZ, <br><br> Plaintiff, <br><br> vs. <br><br> CHAD KAPLA, Unit Manager, FPC Yankton, in his individual capacity; and E. PENROSE, Assistant Warden, FPC Yankton, in her individual capacity, <br><br> Defendants. | 4:25-CV-04146-CCT <br><br><br> **1915A SCREENING** |

Plaintiff, Adriano Alain Cortez, who was previously an inmate at the Yankton Federal Prison Camp,[1] filed a pro se civil rights lawsuit. Docket 1, 1-1. The Court granted Cortez's motion for leave to proceed in forma pauperis and ordered him to pay an initial partial filing fee in accordance with 28 U.S.C. § 1915(b)(1). Docket 6. Cortez timely paid the initial partial filing fee. The Court will now assess Cortez's claims under 28 U.S.C. § 1915A.

## I.    Factual Background Alleged by Cortez

Cortez is a federal prisoner who was detained at the Yankton Federal Prison Camp (FPC). Docket 1 ¶ 3; Docket 1-1 at 1. Defendant Chad Kapla is a case manager employed by the Bureau of Prisons at FPC Yankton. Docket 1 ¶ 4. Defendant Erin Penrose is an assistant warden employed by the Bureau of

---

[1] Cortez is now located at the Federal Correctional Institution in Forrest City, Arkansas. *See Find an Inmate,* Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 19, 2026).

Prisons at FPC Yankton. *Id.* ¶ 5. Cortez sues Kapla and Penrose in their individual capacities. *Id.* ¶¶ 4, 5.

Cortez is serving a 121-month sentence pursuant to a federal criminal conviction. *Id.* ¶ 6.[2]  On or about September 29, 2024, Kapla informed Cortez that Cortez was ineligible for First Step Act (FSA) credits under 18 U.S.C. § 3632(d)(4), resulting in the forfeiture of credits Cortez had accumulated since August 2022 and any future credits. *Id.* ¶ 7. Cortez informed Kapla that other prisoners with disqualifying offenses had received FSA time credits. *Id.* ¶ 8. Kapla dismissed Cortez's concern, "stating [Cortez] must 'deal with it[.]'" *Id.*

On or about October 23, 2024, Cortez filed an administrative complaint asserting that the denial of FSA time credits violates his Fifth Amendment equal protection rights because other similarly situated prisoners had received FSA credits. *Id.* ¶ 9. A few days later, Cortez discussed the issue with Penrose, and Penrose stated that "they would investigate[.]" *Id.* ¶ 10. Subsequently, Cortez received a response to his administrative complaint that was signed by Penrose. *Id.* ¶ 11. The response failed to address or reinstate Cortez's FSA time credits. *Id.*

Cortez identifies six other "disqualified offenders" who received FSA time credits and were discharged to residential re-entry centers between December

---

[2] This Court takes judicial notice that Cortez was found guilty of conspiracy to distribute and to possess with intent to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. § 846 and possession with intent to distribute 100 grams or more of heroin and 40 grams or more of fentanyl in violation of 21 U.S.C. § 841(a)(1). *United States v. Cortez*, No. 1:20-CR-10198-FDS at Docket 635 (D. Mass. May 3, 2022).

2024 and April 2025. *Id.* ¶¶ 12, 13. Cortez contends that Kapla and Penrose's actions were intentional, arbitrary, and deliberately indifferent to his clearly established Fifth Amendment equal protection rights and caused him "prolonged incarceration, emotional distress, and loss of liberty." *Id.* ¶ 15. Cortez seeks compensatory damages of $3,000,000 for the "prolonged incarceration, emotional distress, and loss of liberty" caused by defendants' allegedly unconstitutional conduct. *Id.* ¶ 21. He also seeks $6,000,000 in punitive damages "to deter [d]efendants and other federal officials from similar unconstitutional conduct." *Id.* ¶ 22.

## II.    Legal Standard

The Court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of

3

a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the Court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

## III.   Analysis

Cortez alleges that defendants violated his Fifth Amendment equal protection rights by "arbitrarily denying [him] FSA time credits under 18 U.S.C. § 3632(d)(4)(D) while granting such credits to similarly situated prisoners with disqualifying offenses, without a rational basis." Docket 1 ¶ 17. Cortez brings this action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *Id.* at 1.

"A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual

capacity for violations of constitutionally protected rights." *Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998). In *Bivens*, the United States Supreme Court recognized an implied cause of action under the Fourth Amendment against federal officers for entering and searching the plaintiff's apartment and then arresting him, all without a warrant. 403 U.S. at 389. The Supreme Court has only recognized an implied cause of action for money damages under the Constitution in two other contexts: a Fifth Amendment equal protection claim under the Due Process clause against a Congressman for gender discrimination, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and an Eighth Amendment claim against federal prison officials for failure to treat an inmate's serious medical need that resulted in his death, *Carlson v. Green*, 446 U.S. 14, 24 (1980). *See Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017) (recognizing that "[t]hese three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

A *Bivens* remedy is not available for all constitutional violations and expanding the implied cause of action under *Bivens* is "a 'disfavored' judicial activity." *Id.* at 135 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). The Eighth Circuit Court of Appeals has adopted a "presumption against judicial recognition of direct actions for violations of the Constitution by federal officials." *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019) (quoting *Neb. Beef, Ltd. v. Greening*, 398 F.3d 1080, 1084 (8th Cir. 2005)).

In deciding whether to extend a *Bivens* remedy, the Court engages in a two-step inquiry. *See Egbert v. Boule*, 596 U.S. 482, 492 (2022). First, the Court considers whether the claim at issue is "'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* (alteration in original) (quoting *Ziglar*, 582 U.S. at 139). If the claim has not been previously recognized as a *Bivens* claim, the Court proceeds to step two. At step two, the Court asks "if there are 'special factors [that] counsel[] hesitation'" before implying a new cause of action "in the absence of affirmative action by Congress." *Ziglar*, 582 U.S at 136 (quoting *Carlson*, 446 U.S. at 18). Related to this second step is the question of whether an alternative remedy exists. *Id.* at 137; *see also Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). If a court has "reason to pause before applying *Bivens* in a new context or to a new class of defendants—[it should] reject the request." *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020).

The Court must apply the two-step inquiry outlined by the Supreme Court to decide whether to extend a *Bivens* remedy to the contexts alleged by Cortez. *See Egbert*, 596 U.S. at 492. First, the Court considers whether Cortez presents a *Bivens* claim in a new context. *Id.* According to the Supreme Court, "new context" is broad, and the Court considers "a context as 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by [the] Court.'" *Hernandez*, 589 U.S. at 102 (quoting *Ziglar*, 582 U.S. at 139). A case may be meaningfully different:

> [B]ecause of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar,* 582 U.S. at 139–40.

Cortez references *Davis v. Passman,* 442 U.S. 228 (1979) is his complaint. Docket 1 at 1, ¶ 19. In *Davis,* the Supreme Court recognized a Fifth Amendment equal protection claim is cognizable under *Bivens,* but that case involved a discrimination claim in an employment setting, not in a correctional setting. *Davis,* 442 U.S. at 230–48. Further, in *Davis,* the plaintiff alleged gender discrimination. *Id.* Here, Cortez does not allege that he was treated differently based on his gender or any other suspect or protected class. *See generally* Docket 1. He claims that he was treated differently than similarly situated prisoners and that there was no rational basis for doing so. *Id.* ¶ 17. Thus, Cortez alleges a "class-of-one" equal protection claim. *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

"[A] context can be new even if it involves the same constitutional right as an existing case." *Farah,* 926 F.3d at 499. In *Mays v. Smith,* the Fourth

Circuit Court of Appeals reasoned that a federal prisoner's race-based equal protection claims arising out of his prison employment "are brought against a new category of defendants—prison officials, as opposed to a former Congressman in *Davis*—operating in a different legal and factual context (prisoner litigation)." 70 F.4th 198, 203 (4th Cir. 2023) (citation modified). District courts consistently hold that equal protection claims by prisoners would require extending *Bivens* to a new context because "even a modest extension is still an extension." *Brown v. Cooper*, Civ. No. 18-219 (DSD/BRT), 2018 WL 6977594, at *12 (D. Minn. Dec. 11, 2018) (quoting *Ziglar*, 582 U.S. at 147), *report and recommendation adopted by* 2019 WL 121943 (D. Minn. Jan. 7, 2019), *aff'd in relevant part as modified*, 787 F. App'x 366 (8th Cir. 2019) (per curiam); *see also Hall v. Chapman*, 627 F. Supp. 3d 804, 814–16 (E.D. Mich. 2022) (dismissing a federal prisoner's *Bivens* claim alleging race-discrimination in violation of the Fifth Amendment in connection with prison employment because it arises in a new context); *Jones v. Fedo*, No. 20-CV-2168 (WMW/HB), 2021 WL 7287670, at *5 (D. Minn. Dec. 31, 2021) (holding that a *Bivens* claim alleging an equal protection violation for race-based discrimination in the correctional setting arises in a new context), *report and recommendation adopted by* 2022 WL 673261 (D. Minn. Mar. 7, 2022). "Multiple courts considering Fifth Amendment due process and equal protection claims against BOP officials and employees have determined that they arise in a new context from the employment discrimination claim raised in

8

*Davis.*" *Solomon v. Antonelli*, No. 5:22-CV-483-WWB-PRL, 2024 WL 3465195, at *5 (M.D. Fla. July 1, 2024) (collecting cases).

The Supreme Court has never recognized a *Bivens* claim arising out of a class-of-one equal protection claim, and other courts have consistently held that such claims are meaningfully different and arise in a new context. *See, e.g., Jackson-Bey v. United States Dep't of Just.*, No. 24-3193, 2025 WL 3709065, at *1 (7th Cir. Dec. 22, 2025) ("[A] class-of-one equal protection claim is markedly different from cases in which the Supreme Court has recognized a *Bivens* remedy." (citation omitted)); *Pitts v. Hill*, No. 22-CV-00055-SPM, 2023 WL 3585308, at *4 (S.D. Ill. May 22, 2023) (holding that a federal inmate's class-of-one equal protection claim is different in a meaningful way from the gender-based employment discrimination claim against a Congressman in *Davis*); *Stroud v. Warden USP Lewisburg*, No. 1:22-CV-0515, 2022 WL 17340626, at *5 (M.D. Pa. Nov. 30, 2022) (holding that there is no existing *Bivens* remedy for a class-of-one equal protection claim by a prisoner against prison officials for treating him differently than similarly situated prisoners).

Because the Court finds that Cortez's Fifth Amendment class-of-one equal protection claim is "meaningly different" than those *Bivens* claims previously recognized by the Supreme Court, the Court proceeds to the second step. In this case, there are special factors that counsel against extending *Bivens* to Cortez's equal protection claim. First, "[p]risoner civil rights litigation . . . is heavily regulated by Congress, counseling hesitation in the expansion of remedies available to prisoners." *Brown*, 2018 WL 6977594, at *12. "Congress

legislated prisoner litigation through the Prisoner Litigation Reform Act [PLRA] and did not provide a damages claim against federal prison officials. . . . Congress likely would have included such a remedy if it had intended to provide one." *Yarclay v. Averitt*, No. CIV-22-445-G, 2022 WL 20701862, at *4 (W.D. Okla. July 8, 2022) (collecting cases); *see also Mays*, 70 F.4th at 206 (recognizing that the PLRA "does not provide for a standalone damages remedy against federal jailers[.]" (quoting *Ziglar*, 582 U.S. at 149)).

Second, other remedies exist to address the claims alleged by Cortez. Federal prisoners who allege that their Fifth Amendment rights have been violated may seek relief under the BOP Administrative Remedy Program. *See* 28 C.F.R. §§ 542.10–542.19. "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." *Id.* § 542.10(a); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (recognizing that federal prisoners "have full access to remedial mechanisms established by the BOP, including suits in federal courts for injunctive relief and grievances filed through the BOP's Administrative Remedy Program[.]"). The availability of alternative remedies is a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Hardy v. Bureau of Prisons*, Civ. No. 18-794 (DSD/BRT), 2019 WL 3085963, at *3 (D. Minn. June 10, 2019) (quoting *Wilkie*, 551 U.S. at 550), *report and recommendation adopted by* 2019 WL 3080916 (D. Minn. July 15, 2019). "[A] court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an

10

alternative remedial structure.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137).

Here, Cortez alleges that the response to his administrative complaint "failed to address or reinstate his FSA credits[]" and that he filed appeals with the BOP. Docket 1 ¶¶ 11, 14. That Cortez did not obtain relief through the administrative process does not mean that the administrative process is not an alternative remedy. *McIntosh v. Gallion*, No. 23-CV-3149 (JRT/ECW), 2024 WL 4278754, at *9 (D. Minn. Aug. 29, 2024), *report and recommendation adopted by* 2024 WL 4278664 (D. Minn. Sep. 24, 2024); *see also Dockery v. Baltazar*, No. 4:20-CV-01676, 2021 WL 2014969, at *3 (M.D. Pa. May 19, 2021) ("I join other courts . . . in concluding that the BOP's Administrative Remedy Program provides an alternative process. . . . [T]he fact that [the plaintiff] was unsuccessful in utilizing the administrative process does not mean that such a process does not exist as an alternative remedy." (footnotes omitted)).

Finally, recognizing a *Bivens* remedy in the context alleged by Cortez poses a risk of judicial interference with prison administration, another special factor that counsels against extending a *Bivens* remedy in a new context. *See Mays*, 70 F.4th at 205–06; *Solomon*, 2024 WL 3465195, at *6. "The BOP's administrative remedy process has the added benefit of limiting judicial interference with prison management while maintaining a method of redress for valid constitutional claims." *Yarclay*, 2022 WL 20701862, at *5.

## IV.      Conclusion

In conclusion, because Cortez's equal protection *Bivens* claim arises in a new context, and special factors counsel against extending a remedy under *Bivens* in the context alleged by Cortez, Cortez's complaint fails to state a claim upon which relief can be granted. Thus, it is

ORDERED that Cortez's complaint, Docket 1, alleging a violation of his Fifth Amendment right to equal protection is dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Dated May 21, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
 UNITED STATES DISTRICT JUDGE